FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FEB 24 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. **16CR   115** |
| | ) | |
| v. | ) | Violations: Title 18, United States |
| | ) | Code, Sections 1343 and 1344 |
| | ) | |
| EDWARD F. BOLIAUX | ) | **UNDER SEAL**    JUDGE SHAH |

MAGISTRATE JUDGE VALDEZ

COUNT ONE

The SPECIAL SEPTEMBER 2014 GRAND JURY charges:

1.      At times material to this indictment:

a.      EMC Automotive, Inc. ("EMC"), was an Illinois corporation owned and controlled by defendant EDWARD F. BOLIAUX. EMC sold used automobiles from a lot located in Will County, Illinois, with a mailing address of 1321 Cass Street, Joliet, Illinois ("1321 Cass Street").

b.      EMC Acceptance, LLC ("EMC Acceptance"), was an Illinois corporation owned and controlled by defendant EDWARD F. BOLIAUX.

c.      Automotive Finance Corporation ("AFC") was a company that offered floorplan lending and receivables financing to, among other entities, used automobile dealers.

d.      Dealer Services Corporation ("DSC") was a company that offered floorplan lending and receivables financing to, among other entities, used automobile dealers.

e.      Manheim Automotive Financial Services, Inc. ("MAFS"), was a company that offered floorplan lending and receivables financing to, among other entities, used automobile dealers.

f.      General Motors Acceptance Corporation ("GMAC") was a corporation that extended credit to qualified retail customers who purchased or rented vehicles. Customers who received GMAC financing for their automobile purchase granted to GMAC a security interest in the automobile while the debt existed.

g.      EMC entered into separate floorplan financing agreements with AFC and DSC, pursuant to which AFC and DSC extended credit to EMC for the purchase of automobiles by EMC as inventory. EMC also entered into a receivables financing agreement with AFC, whereby AFC agreed to finance EMC's extensions of credit to retail customers purchasing automobiles from EMC. In exchange for the respective extensions of credit by AFC and DSC, EMC, among other things:

(i)      agreed to pay certain interest and fees for the advance of funds by AFC and DSC under the financing agreements;

(ii)     for each particular automobile that was purchased with AFC or DSC funds under the floorplan financing agreements, agreed to pay to AFC or DSC the full amount (principal, interest and fees) due to AFC or DSC for that automobile by no later than 48 hours after sale or other disposition of the automobile;

2

(iii)   to ensure repayment of EMC's obligations to AFC and DSC, granted to AFC and DSC a security interest in all of EMC's assets and property, including automobiles purchased under the floorplan financing agreement or financed under AFC's receivables financing agreement; and

(iv)   agreed to provide to AFC or DSC the valid original title document for any vehicle purchased under the floorplan financing agreements or for which receivables financing was provided by AFC, with agreement that AFC or DSC would hold such title as collateral until all obligations due for the subject vehicle were paid in full.

In addition, defendant EDWARD F. BOLIAUX agreed to be individually liable to AFC and DSC for any debts owed by EMC pursuant to its respective automobile financing agreements with AFC and DSC.

h.   EMC Acceptance entered into a floorplan financing agreement with MAFS, pursuant to which MAFS extended credit to EMC Acceptance for the purchase of automobiles by EMC as inventory. EMC Acceptance also entered into a receivables financing agreement with MAFS, whereby MAFS agreed to finance EMC Acceptance's extension of credit to retail customers purchasing automobiles from EMC Acceptance. In exchange for the extension of credit by MAFS, EMC Acceptance, among other things:

(i)   agreed to pay certain interest and fees for the advance of funds by MAFS under the financing agreement;

3

(ii)     for each particular automobile that was purchased with MAFS funds under the floorplan financing agreement, agreed to pay to MAFS the full amount (principal, interest and fees) due to MAFS for that automobile by no later than 48 hours after sale or other disposition of the automobile;

(iii)    granted to MAFS a security interest in EMC Acceptance's assets and property including automobiles purchased under the floorplan financing agreement or financed under the receivables financing agreement; and

(iv)    agreed to provide to MAFS the valid original title document for any vehicle purchased under the floorplan financing agreement or for which receivables financing was provided by MAFS, with agreement that MAFS would hold such title as collateral until all obligations due for the subject vehicle were paid in full.

In addition, defendant EDWARD F. BOLIAUX agreed to be individually liable to MAFS for any debts owed by EMC Acceptance pursuant to its automobile financing agreements with MAFS.

2.     Beginning no later than in or about Fall 2007, and continuing until at least in or about July 2011, at Will County, in the Northern District of Illinois, Eastern Division, and elsewhere,

EDWARD F. BOLIAUX,

defendant herein, devised, intended to devise, and participated in a scheme to defraud AFC, DSC and MAFS (collectively, "the Lenders") and GMAC, and to obtain money and property from the Lenders by means of materially false and fraudulent pretenses, representations and promises, which scheme is further described below.

3.     It was part of the scheme that, from in or about Fall 2007 through at least in or about July 2008, defendant EDWARD F. BOLIAUX caused EMC and EMC Acceptance to sell vehicles purchased under the Lenders' respective floorplan financing agreements without repaying the respective Lender within 48 hours of the sale or other disposition of the subject automobile, such violation of the financing agreement being known as selling a vehicle "out of trust."

4.     It was further part of the scheme that, beginning no later than in or about Fall 2007, defendant EDWARD F. BOLIAUX caused EMC and EMC Acceptance to finance automobiles simultaneously with one or more of the Lenders (which was known as "double-floorplanning" or "triple-floorplanning").

5.     It was further part of the scheme that, in order to double or triple floorplan an automobile, and with knowledge that the original automobile title was held by the first Lender to extend financing for the automobile, defendant EDWARD F. BOLIAUX made false material statements to the Illinois Secretary of

State in order to procure duplicate titles, as necessary, to procure financing from one or both of the remaining Lenders. By doing so, defendant EDWARD F. BOLIAUX caused EMC and EMC Acceptance to obtain financing multiple times for a single automobile that was pledged separately as collateral to each Lender.

6.     It was further part of the scheme that, when double or triple floorplanning an automobile, defendant EDWARD F. BOLIAUX falsely represented to the second and third Lenders that they held the sole security interest in the subject automobile even though, as defendant EDWARD F. BOLIAUX, knew, the second and third Lenders did not hold the sole security interest in the subject automobile.

7.     It was further part of the scheme that, when double or triple floorplanning an automobile, defendant EDWARD F. BOLIAUX refrained from informing the first Lender that EMC (or EMC Acceptance) had further financed the subject automobile with, and created a new security interest in favor of, a second and/or third Lender.

8.     It was further part of the scheme that, when double or triple floorplanning an automobile, defendant EDWARD F. BOLIAUX submitted false sales paperwork to one or more of the Lenders.

9.     It was further part of the scheme that defendant EDWARD F. BOLIAUX floorplanned with the Lenders vehicles that EMC had purchased with financing from GMAC, knowing that doing so violated the terms of EMC's financing agreement with GMAC.

10.   It was further part of the scheme that defendant EDWARD F. BOLIAUX created fictitious GMAC lien releases and submitted them to the Illinois Secretary of State in order to obtain "clean" titles for the subject automobiles, which defendant EDWARD F. BOLIAUX then provided to the Lenders to obtain floorplan or receivables financing.

11.   It was further part of the scheme that, in or about September 2008, after the Lenders learned the defendant EDWARD F. BOLIAUX had sold floorplanned vehicles out of trust and had double and triple floorplanned vehicles amongst them, defendant EDWARD F. BOLIAUX took steps to conceal the assets of EMC, EMC Acceptance and defendant EDWARD F. BOLIAUX in an effort to (a) defeat the Lenders' security interests in EMC and EMC Acceptance's assets and properties; and (b) avoid having to honor his individual guarantee to pay EMC's and EMC Acceptance's obligations to the Lenders.

12.   It was further part of the scheme that, in early September 2008, in order to conceal the assets of EMC, EMC Acceptance and defendant EDWARD F. BOLIAUX from the Lenders, defendant EDWARD F. BOLIAUX caused Individual A to incorporate Joliet Motors, Inc. ("Joliet Motors"), with the Illinois Secretary of State.

13.   It was further part of the scheme that, even though Individual A ostensibly owned and operated Joliet Motors, defendant EDWARD F. BOLIAUX, in fact, operated Joliet Motors and controlled its assets as his own.

7

14.    It was further part of the scheme that defendant EDWARD F. BOLIAUX caused Joliet Motors to begin operating at 1321 Cass Street in or about Fall 2008.

15.    It was further part of the scheme that defendant EDWARD F. BOLIAUX caused Joliet Motors to continue receiving payments from individuals who had purchased automobiles from EMC on an installment plan.

16.    It was further part of the scheme that, in order to purchase inventory for Joliet Motors, defendant EDWARD F. BOLIAUX engaged in a "check kiting" scheme during January 2009 that involved six different bank accounts.

17.    It was further part of the scheme that, on February 3, 2009, while under oath during a deposition being taken as part of litigation in the Will County Circuit Court, defendant EDWARD F. BOLIAUX falsely testified that, other than having sold cars to Joliet Motors and leasing the 1321 Cass Street property to Joliet Motors, defendant EDWARD F. BOLIAUX had no other relationship to Joliet Motors.

18.    It was further part of the scheme that, during the existence of Joliet Motors, defendant EDWARD F. BOLIAUX converted for his personal benefit the money, funds and assets of Joliet Motors without notification to the Lenders.

19.    It was further part of the scheme that defendant EDWARD F. BOLIAUX did misrepresent, conceal and hide, and caused to be misrepresented, concealed and hidden, acts done in furtherance of the scheme and the purposes of those acts.

8

20.     On or about March 18, 2011, at Will County, in the Northern District of Illinois, Eastern Division, and elsewhere,

EDWARD F. BOLIAUX,

defendant herein, for the purpose of executing the above-described scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce certain signs, signals and sounds, namely, a wire communication consisting of an electronic payment in the amount of approximately $330 for the purchase of a 2002 Chevrolet Silverado (bearing a Vehicle Identification Number ("VIN") ending in 113851) sold by Joliet Motors, between the Northern District of Illinois and a place outside of the State of Illinois.

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.      The allegations in paragraphs 1 through 19 of Count One of this indictment are re-alleged and incorporated herein.

2.      On or about April 18, 2011, at Will County, in the Northern District of Illinois, Eastern Division, and elsewhere,

### EDWARD F. BOLIAUX,

defendant herein, for the purpose of executing the above-described scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce certain signs, signals and sounds, namely, a wire communication consisting of an electronic payment in the amount of approximately $330 for the purchase of a 2002 Chevrolet Silverado (bearing a VIN ending in 113851) sold by Joliet Motors, between the Northern District of Illinois and a place outside of the State of Illinois.

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.    The allegations in paragraphs 1 through 19 of Count One of this indictment are re-alleged and incorporated herein.

2.    On or about May 16, 2011, at Will County, in the Northern District of Illinois, Eastern Division, and elsewhere,

### EDWARD F. BOLIAUX,

defendant herein, for the purpose of executing the above-described scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce certain signs, signals and sounds, namely, a wire communication consisting of an electronic payment in the amount of approximately $330 for the purchase of a 2002 Chevrolet Silverado (bearing a VIN ending in 113851) sold by Joliet Motors, between the Northern District of Illinois and a place outside of the State of Illinois.

In violation of Title 18, United States Code, Section 1343.

<u>COUNT FOUR</u>

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 19 of Count One of this indictment are re-alleged and incorporated herein.

2.     On or about June 16, 2011, at Will County, in the Northern District of Illinois, Eastern Division, and elsewhere,

EDWARD F. BOLIAUX,

defendant herein, for the purpose of executing the above-described scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce certain signs, signals and sounds, namely, a wire communication consisting of an electronic payment in the amount of approximately $330 for the purchase of a 2002 Chevrolet Silverado (bearing a VIN ending in 113851) sold by Joliet Motors, between the Northern District of Illinois and a place outside of the State of Illinois.

In violation of Title 18, United States Code, Section 1343.

## COUNT FIVE

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.      At times material to this indictment:

      a.      EMC Automotive, Inc. ("EMC"), was an Illinois corporation owned and controlled by defendant EDWARD F. BOLIAUX.

      b.      EMC Acceptance, LLC ("EMC Acceptance"), was an Illinois corporation owned and controlled by defendant EDWARD F. BOLIAUX.

      c.      EMC Transport was a business that operated as a sole proprietorship owned and controlled by defendant EDWARD F. BOLIAUX.

      d.      Joliet Motors, Inc. ("Joliet Motors") was an Illinois corporation ostensibly owned and operated by Individual A but which was in fact operated and controlled by defendant EDWARD F. BOLIAUX. Joliet Motors sold used automobiles from a lot located at or near the address 1321 Cass Street, Joliet, Illinois.

      e.      First Midwest Bank was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"). First Midwest Bank had retail branch offices in multiple locations, including in Plainfield, Illinois.

      f.      Harris Bank was a financial institution, the deposits of which were insured by the FDIC. Harris Bank had retail branch offices in multiple locations, including in Joliet, Illinois.

13

g.     Amcore Bank was a financial institution, the deposits of which were insured by the FDIC. Amcore Bank had retail branch offices in multiple locations, including Joliet, Illinois.

h.     American Chartered Bank was a financial institution, the deposits of which were insured by the FDIC. American Chartered Bank had retail branch offices in multiple locations, including in Warrenville, Illinois.

i.     From at least December 2008, through and including at least early February 2009, the foregoing businesses held checking accounts (hereinafter, "the Subject Accounts") at financial institutions, as follows:

| Account Holder | Financial Institution and Last Four Digits of Account Number | Signatories |
| --- | --- | --- |
| EMC | First Midwest Bank 7273 | Edward Boliaux Individual A |
| EMC Transport | First Midwest Bank 7264 | Edward Boliaux |
| EMC Acceptance | Harris Bank 3080 | Edward Boliaux |
| EMC | Amcore Bank 4805 | Edward Boliaux |
| EMC | Amer. Chartered Bank 1195 | Edward Boliaux Individual A |
| Joliet Motors | Harris Bank 6584 | Individual A |

j.     On or about December 31, 2008, Joliet Motors issued approximately 14 checks, drawn on Joliet Motors' Harris Bank checking account, which totaled approximately $33,600 and which were made payable to a wholesale used car dealer (hereinafter, "the First Set of Inventory Checks").

k.     As of January 6, 2009, the ending balances of the Subject Accounts were approximately as follows:

| Account Holder | Financial Institution and Last Four Digits of Account Number | Account Balance January 6, 2009 |
|---|---|---|
| EMC | First Midwest Bank 7273 | - $809.72 |
| EMC Transport | First Midwest Bank 7264 | $377.56 |
| EMC Acceptance | Harris Bank 3080 | $274.26 |
| EMC | Amcore Bank 4805 | $4,569.83 |
| EMC | Amer. Chartered Bank 1195 | $186.85 |
| Joliet Motors | Harris Bank 6584 | $2,340.75 |

l.     The First Set of Inventory Checks posted to Joliet Motors' Harris Bank checking account on January 7, 2009.

15

2.     Beginning no later than on or about January 7, 2009, and continuing until at least early February 2009, at Joliet, Plainfield and Warrenville, in the Northern District of Illinois, Eastern Division, and elsewhere,

EDWARD F. BOLIAUX,

defendant herein, knowingly devised and engaged, and attempted to engage, in a scheme and artifice to defraud First Midwest Bank, Harris Bank, Amcore Bank and American Chartered Bank, which scheme and artifice to defraud is commonly known as a "check kite," and is described below.

3.     It was part of the scheme that, on or about January 7, 2009, in order to prevent the First Set of Inventory Checks from being returned by virtue of insufficient funds in Joliet Motors' Harris Bank checking account, defendant EDWARD F. BOLIAUX caused four worthless checks totaling $34,000, drawn on the EMC's First Midwest Bank checking account, to be deposited into Joliet Motors' Harris Bank checking account, knowing that the balance in EMC's First Midwest Bank Account was insufficient to cover the checks.

4.     It was further part of the scheme that, on each successive business day in January 2009, through and including January 21, 2009, defendant EDWARD F. BOLIAUX caused worthless checks drawn on one Subject Account to be deposited into the Subject Account which had most recently received a deposit of worthless checks from another Subject Account, including as follows:

| Date | Account Holder Issuing Account | Account Holder Depositing Account | Number of Checks Total Amount |
|---|---|---|---|
| 01/08/09 (Th.) | EMC Amcore Bank | EMC First Midwest Bank | 3 checks $34,500 |
| 01/09/09 (Fri.) | Joliet Motors Harris Bank | EMC Amcore Bank | 4 checks $34,300 |
| 01/12/09 (Mon.) | EMC American Chartered Bank | Joliet Motors Harris Bank | 1 check $18,500 |
| 01/13/09 (Tu.) | EMC Amcore Bank | EMC American Chartered Bank | 1 check $20,000 |
| 01/14/09 (Wed.) | Joliet Motors Harris Bank | EMC Amcore Bank | 2 checks $14,000 |
| 01/15/09 (Th.) | EMC First Midwest Bank | Joliet Motors Harris Bank | 1 check $19,800 |
| 01/16/09 (Fri.) | EMC American Chartered Bank | EMC First Midwest Bank | 2 checks $20,000 |
| 01/20/09 (Tu.) | EMC Acceptance Harris Bank | EMC American Chartered Bank | 3 checks $20,600 |
| 01/21/09 (Wed.) | EMC Transport First Midwest Bank | EMC Acceptance Harris Bank | 3 checks $28,600 |

17

5.    It was further part of the scheme that, up to on or about January 19, 2009, Joliet Motors issued approximately 12 checks, drawn on Joliet Motors' Harris Bank checking account, that totaled approximately $35,400, and which were made payable to a wholesale used car dealer (hereinafter, "the Second Set of Inventory Checks"). The Second Set of Inventory Checks posted to Joliet Motors' Harris Bank checking account on or about January 22, 2009.

6.    It was further part of the scheme that, on or about January 22, 2009, in order to prevent the Second Set of Inventory Checks from being returned by virtue of insufficient funds in Joliet Motors' Harris Bank checking account, defendant EDWARD F. BOLIAUX caused the deposit of four worthless checks, drawn on EMC's Amcore Bank checking account, totaling $35,500 to be deposited into Joliet Motors' Harris Bank checking account.

7.    It was further part of the scheme that, on or about January 22, 2009, in order to maintain the check kite with respect to the First Set of Inventory Checks, defendant EDWARD F. BOLIAUX caused the deposit of four worthless checks, drawn on EMC's Amcore Bank checking account, totaling $28,900 to be deposited into EMC Transport's Harris Bank checking account.

8.    It was further part of the scheme that, on each successive remaining business day in January 2009, through and including January 29, 2009, defendant EDWARD F. BOLIAUX caused worthless checks drawn on one Subject Account to be deposited into the Subject Account which had most recently received a deposit of worthless checks from another Subject Account, including as follows:

| Date | Account Holder Issuing Account | Account Holder Depositing Account | Number of Checks Total Amount |
|---|---|---|---|
| 01/23/09 (Fri.) | EMC American Chartered Bank | EMC Amcore Bank | 8 checks $64,400 |
| 01/26/09 (Mon.) | Joliet Motors Harris Bank | EMC American Chartered Bank | 7 checks $62,900 |
| 01/27/09 (Tu.) | EMC First Midwest Bank | Joliet Motors Harris Bank | 5 checks $63,500 |
| 01/28/09 (Wed.) | EMC Acceptance Harris Bank | EMC First Midwest Bank | 6 checks $63,800 |
| 01/29/09 (Th.) | EMC Amcore Bank | EMC Acceptance Harris Bank | 9 checks $64,000 |

9.     It was further part of the scheme that, during the time period alleged, as a result of the artificially inflated balances generated by defendant EDWARD F. BOLIAUX in the Subject Accounts by virtue of the check kite, Joliet Motors was able to obtain use bank funds to pay for Joliet Motors' inventory purchases in late December 2008 and mid-January 2009.

10.     It was further part of the scheme that defendant EDWARD F. BOLIAUX did misrepresent, conceal and hide, and caused to be misrepresented,

concealed and hidden, acts done in furtherance of the scheme and the purposes of those acts.

11.    On or about January 7, 2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

EDWARD F. BOLIAUX,

defendant herein, did knowingly execute and attempt to execute the aforesaid scheme to defraud by depositing four checks totaling $34,000, drawn on EMC's First Midwest Bank (7273) checking account, into Joliet Motors' Harris Bank checking account, which worthless checks fraudulently inflated the numerical balance in the checking account into which they were deposited;

In violation of Title 18, United States Code, Section 1344.

## COUNT SIX

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 10 of Count Five of this indictment are re-alleged and incorporated herein.

2.     On or about January 8, 2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

### EDWARD F. BOLIAUX,

defendant herein, did knowingly execute and attempt to execute the aforesaid scheme to defraud by depositing three checks totaling $34,500, drawn on EMC's Amcore Bank checking account, into EMC's First Midwest Bank (7273) checking account, which worthless checks fraudulently inflated the numerical balance in the checking account into which they were deposited;

In violation of Title 18, United States Code, Section 1344.

<u>COUNT SEVEN</u>

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 10 of Count Five of this indictment are re-alleged and incorporated herein.

2.     On or about January 22, 2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

EDWARD F. BOLIAUX,

defendant herein, did knowingly execute and attempt to execute the aforesaid scheme to defraud by depositing four checks totaling $28,900, drawn on EMC's Amcore Bank checking account, into EMC Transport's First Midwest Bank (7264) checking account, which worthless checks fraudulently inflated the numerical balance in the checking account into which they were deposited;

In violation of Title 18, United States Code, Section 1344.

## COUNT EIGHT

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 10 of Count Five of this indictment are re-alleged and incorporated herein.

2.     On or about January 22, 2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

### EDWARD F. BOLIAUX,

defendant herein, did knowingly execute and attempt to execute the aforesaid scheme to defraud by depositing four checks totaling $35,500, drawn on EMC's Amcore Bank checking account, into Joliet Motors' Harris Bank checking account, which worthless checks fraudulently inflated the numerical balance in the checking account into which they were deposited;

In violation of Title 18, United States Code, Section 1344.

## COUNT NINE

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 10 of Count Five of this indictment are re-alleged and incorporated herein.

2.     On or about January 23, 2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

### EDWARD F. BOLIAUX,

defendant herein, did knowingly execute and attempt to execute the aforesaid scheme to defraud by depositing eight checks totaling $64,400, drawn on EMC's American Chartered Bank checking account, into EMC's Amcore Bank checking account, which worthless checks fraudulently inflated the numerical balance in the checking account into which they were deposited;

In violation of Title 18, United States Code, Section 1344.

## COUNT TEN

The SPECIAL SEPTEMBER 2014 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 10 of Count Five of this indictment are re-alleged and incorporated herein.

2.     On or about January 29, 2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

### EDWARD F. BOLIAUX,

defendant herein, did knowingly execute and attempt to execute the aforesaid scheme to defraud by depositing nine checks totaling $64,000, drawn on EMC's Amcore Bank checking account, into EMC Acceptance's Harris Bank checking account, which worthless checks fraudulently inflated the numerical balance in the checking account into which they were deposited;

In violation of Title 18, United States Code, Section 1344.

## FORFEITURE ALLEGATION

THE SPECIAL SEPTEMBER 2014 GRAND JURY further alleges:

1.     Counts One through Ten of this Indictment are incorporated here for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2.     As a result of the offenses charged in Counts One through Ten of this Indictment,

### EDWARD F. BOLIAUX,

defendant herein, shall forfeit to the United States any and all right, title, and interest he has in any property, real and personal, which is derived from proceeds traceable to the offenses in Counts One through Ten.

3.     The interests of defendant subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c), include but are not limited to money in excess of $1.5 million.

4.     If, as a result of any act or omission by the defendant, any of the forfeitable property described above:

       a.     cannot be located upon the exercise of due diligence;

       b.     has been transferred or sold to, or deposited with, a third party;

       c.     has been placed beyond the jurisdiction of the Court;

       d.     has been substantially diminished in value; or

       e.     has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY